Alexander Del Giorno, J.
The infant plaintiff, born December 4, 1941, was admitted to Willowbrook State School on September 22, 1952. On March 15, 1953, when he was 11 years of age, he was burned on his buttocks. He was placed in the school infirmary for treatments and remained there until June 10, 1953.
*954 This young man was certified in Willowbrook as suffering with cerebral palsy due to trauma during birth; motor aphasia with marked wrist drop of right hand and spasticity of muscles in both ,arms and legs. He was classified as a low-grade imbecile with an I. Q. of 23 with a maximum of 32 on the basis of his Merrill-Palmer tests. The doctors, however, observed that he was alert, cheerful and co-operative. Although he lacked speech, he made his wants known by gesture.
At the trial he was 20 years of age. The court submitted him to an extended test to determine his power of understanding. All questions had to be leading and selective. When the right thing or suggestion was submitted he would quickly indicate by motion of head or hands assent or denial. He was very alert, certainly honest and pleasant. He was not sworn by the court because of the unorthodox manner required for questioning and to permit his attorney the fullest latitude of approach to any subject.
Substantially, he testified that he was in Ward 7. That at the time of his injury he was in a small room (presumably a bathroom) ; that he was nude (why was not made clear) and was standing some three feet away from a steam radiator with his back towards the radiator; that while he was there alone a “house boy” (who was a “house boy” was not explained), taller than he, entered the room and pushed him against the radiator resulting in his receiving second degree burns on both his buttocks, which kept him in the infirmary, lying on his stomach, until June 10, 1953, almost three months. Although completely healed as of the day of his discharge from the infirmary, he still has two scars each about 1% inches in diameter.
The father was the only other witness who stated he had not known of this incident until he made his regular visit to the institution.
There was no other testimony on the part of the claimant and the State.
The claimant moved for judgment on his claim of $150,000 or so much thereof as the court would grant. The State moved for dismissal on the ground that the claimant had failed to prove any negligence on the part of the State.
A second cause of action alleging that the State had been negligent in that it permitted infant claimant to be without necessary braces for his legs was withdrawn during the trial.
Were we to determine this case favorably to the claimant it would mean that we would here apply the doctrine of res ipsa loquitur. Such elementary approach, however, is not permitted *955 us on the basis of the testimony adduced. This is not the case of a falling chandelier or the bursting of a hot radiator resulting in claimant being scalded. The allegations and testimony here disclose that another boy, whether one who was of a like mentality to that of the infant claimant or a “ house boy ” (whatever a “house boy” may be) pushed the claimant against the radiator.
It is true ‘1 that the State is under a duty to take eve,ry reasonable precaution to protect the patients in its various institutions from injury, self-inflicted or otherwise ”, which degree of care is to be measured by the patient’s physical and mental deficiencies. (Zajacskowski v. State of New York, 189 Misc. 299, 302.) But it is also true that it is the duty of the claimant to prove by facts and circumstances the duty the State owed to the claimant in the way of care and supervision, the negligent lack of it at the time, and that such negligence was the proximate cause of the unfortunate incident. No doctor was produced who should have indicated the care required by the claimant. No examination before trial or actual testimony was brought to the attention of the court at the trial which should have indicated the care and supervision the claimant was entitled to, and the lack of it at the time of the injury to claimant.
As a result, we are left to speculate as to how the claimant was hurt; whether there was a guard present or not and whether a guard was supposed to be there; whether the ‘6 house boy ” was permitted to be there or not; whether the “house boy ” was normal or not; whether he was a patient or not, and if a patient, was he doing chores as part of his recuperative therapy and therefore, requiring less supervision; whether the two boys were friendly or hostile to each other; whether there had been other incidents before between them? The clarification of these questions called for positive, factual testimony on the part of the claimant, but none was presented.
We are, therefore, constrained to apply the maxim in Hirsh v. State of New York (8 N Y 2d 125, 127) which proclaims that “ Reasonable care is required to protect such patients against themselves (Martindale v. State of New York, 269 N. Y. 554; Gries v. Long Is. Home, 274 App. Div. 938) but no evidence of lack of it has been shown in this case. ’ ’
I find that no evidence has been presented here which would indicate any negligence on the part of the State.
The motion made by the State to dismiss the claim on the ground that no negligence on its part had been shown is granted, and the claim is dismissed.