LILLIAN POYAS, an Infant, by LILLIAN POYAS, Her Guardian ad Litem, et al., Respondents, *v.* RKO KEITH ORPHEUM THEATRES, INC., Appellant.

First Department, November 14, 1961.

*Thomas I. Brennan* for appellant.

*Harry E. Kreindler* of counsel (*Paul S. Edelman* with him on the brief; *Holtzman & Ross*, attorneys), for respondents.

STEUER, J. The infant plaintiff, a child two and a half years of age, has recovered a verdict for $12,000 against the defendant. It appears that the plaintiff was taken by her mother into the lobby of defendant's theatre, and while the mother was looking at the display of pictures in the lobby the plaintiff wandered off and was next seen by her mother immediately in front of a radiator cover which was falling on the child.

Several possibilities as to how the accident happened will occur under this state of facts. Among these would be that the cover fell because the child pulled it down on herself, or that it had been improperly put in place, or that it was defective to the extent that it was unstable. None of these possibilities is claimed by the plaintiff. There is no contention that the cover was defective in any respect, except that it had no exterior fastenings in the shape of hooks or wires. The sole claim, therefore, is improper design. Where the article or device is one in common and extensive use, conforming to the usual pattern is not negligence (*Smolen* v. *Grandview Dairy,* 301 N. Y. 265; *Levine* v. *Blaine Co.,* 273 N. Y. 386; *Garthe* v. *Ruppert,* 264 N. Y. 290). Furthermore, the fact that, despite the passing of many thousands of people, this cover had never fallen before is a potent factor in showing that the design was reasonably safe (see *De Salvo* v. *Stanley-Mark-Strand Corp.,* 281 N. Y. 333, motion for reargument denied 282 N. Y. 589). As the record is silent as to any difference in installation from that generally employed, no issue on that point was presented (see *Smolen* v. *Grandview Dairy, supra*).

It is, of course, always possible after an accident to find different ways in which a thing may have been done, and to point out which ways might possibly have obviated the accident. But even if it were assumed that an issue was presented, it is difficult to see how this jury, under the very general instructions as to negligence, could have understood what the precise question that was being presented to them was (*Maloney* v. *Kaplan,* 233 N. Y. 426, 430; *Simon* v. *Brooklyn & Queens Tr. Corp.,* 269 App. Div. 847; *Thomas* v. *Wollcott,* 180 N. Y. S. 798).

The judgment should be reversed, on the law and the facts, and a new trial ordered, in the exercise of discretion, with costs to abide the event.

BREITEL, J. P. (dissenting). The mother testified that she saw the radiator cover fall on the child. The jury accepted

this version, and defendant offered no contradictory proof as to how the accident happened. It was also a jury question then whether the mere fitting of such a radiator cover into the molded recess was a sufficient safeguard against the cover falling on invitees to defendant's premises. Since continued use over the years is very likely to reduce the closeness of the fitting, so as to make the radiator cover unstable, there was a ground for finding negligent maintenance. The proof established that the radiator cover was held in place, at the time of the accident, by nothing more than its own weight leaning against the molded recess.

Surely, it is easy enough to speculate after an accident, and even more so after the trial, on the many ways in which an accident may have happened. This court has no greater privilege in this regard than the trial jury. In this case the charged negligence was merely that the radiator cover was not properly secured; and that because of its instability it fell upon the child. Maybe the proof was contrived, but it was credible and it was not contradicted. An employee of defendant testified to seeing a little girl running around the lobby, but he was not sure if it was the same child who later was injured. Indeed, even if a little child, two and a half years of age, by running into this cover, as speculated by defendant, caused it to fall on her, there was a fair jury question whether it was a negligently maintained unstable cover. Of course, if the cover never fell, there was no case, but the jury believed plaintiff's proof offered on this element of the case.

It is also noteworthy that there was no proof either way of common design or extensive use with respect to radiator covers. Hence, there is no support for the theses either that this radiator cover conformed or did not conform to common design or extensive use.

As for the generality of the charge, it was defendant's duty by proper requests to elicit more specific instruction, if that was its wish. However, the requests were either not intelligible or improper.

Moreover, if the majority is correct in its analysis, there should be no new trial but a dismissal of the complaint.

Accordingly, I dissent and vote to affirm the verdict and judgment in favor of plaintiffs.

McNALLY and EAGER, JJ., concur with STEUER, J.; BREITEL, J. P., dissents and votes to affirm in opinion in which STEVENS, J., concurs.

Judgment reversed, on the law and the facts, and a new trial ordered, in the exercise of discretion, with costs to abide the event.