In Re Subpoena Pertaining to Nurse W., No. 634-10-05 Wncv (Toor, J., Nov. 1, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| In re SUBPOENA PERTAINING TO NURSE W. | SUPERIOR COURT<br><br>Docket No. 634-10-05 Wncv |

RULING ON REQUEST FOR ENFORCEMENT OF SUBPOENA

The State filed this action seeking enforcement of a subpoena served on Central Vermont Medical Center (Hospital). The subpoena seeks records that include patient records within the scope of the patient's privilege set forth in 12 V.S.A. § 1612 (a). Oral argument was held on the motion on October 31. The parties disagree not on the facts, but on the law.

The State seeks the records in question as part of its investigation of a report made to the State by the Hospital. The Hospital reported to the State that it had reason to believe that Nurse W had diverted narcotic drugs. The State began an investigation, and sought records beyond those initially provided by the Hospital. The Hospital offered to produce the records in redacted form, with identifying patient information deleted. The State seeks the unredacted records. The Hospital takes the position that although it wishes to cooperate with the State, it cannot release the unredacted patient records without a court order. The State takes the position that the

statutory patient's privilege is overridden by the statute requiring hospitals to report suspected problems, and by public policy concerns.

The patient privilege statute on which the Hospital relies reads in relevant part as follows:

> Unless the patient waives the privilege or unless the privilege is waived by an express provision of law, a person authorized to practice medicine, . . . shall not be allowed to disclose any information acquired in attending a patient in a professional capacity[.]

12 V.S.A. § 1612 (a).The Hospital points to the language requiring waiver by "an express provision of law" and argues that it is not free to release the records without such a statute.

The State argues that there is such an express waiver in the statute concerning these investigations. The language to which the State points is the following:

> Any hospital . . . shall report to the appropriate board, along with supporting information and evidence, any disciplinary action taken by it or its staff . . . which limits or conditions the licensee's privilege to practice or leads to suspension or expulsion from the institution.

3 V.S.A. § 128 (a). This requirement for "supporting information and evidence," the State argues, requires production of all relevant records, privileged or not. The State's second argument is that public policy requires the investigation to override the patient privilege.

## 1. The Statutory Argument

The patient privilege statute protects the privacy of medical treatment records. The language of the statute is very explicit: without a waiver by the patient or by "an express provision of law," the privilege stands. The court cannot agree that the provision requiring production of documentation to support a hospital's report of discipline is such an "express" provision. If the legislature wanted to say "this provision shall over-ride any patient privilege otherwise applicable," it could have done so, as the federal government has done. *See* 45 C.F.R. § 164.512 (d) (1) (allowing disclosure of otherwise protected medical information in "civil,

2

administrative, or criminal investigations; inspections; licensure or disciplinary actions"). It did not. Nor has any legislative history or other basis been offered on which the court can infer a legislative intent to do such a thing when it drafted the language at issue. Without any basis for concluding that the Legislature intended the result the State seeks, this court must apply the literal language of the statute. Because no "express" statutory waiver exists, the court finds the privilege is not waived by 3 V.S.A. § 128 (a).

## 2. The Public Policy Argument

The State goes on to argue that under Vermont law, the patient privilege may be overridden by public policy concerns. The Vermont Supreme Court has held exactly that, in a case addressing whether a mental health professional has a duty to warn an identifiable victim of potential danger from the patient, even if it requires disclosure of privileged information. Peck v. Counseling Service of Addison County, 146 Vt. 61 (1985). In that context, the Court noted that the patient–physician privilege "is not sacrosanct and can properly be waived in the interest of public policy under appropriate circumstances." Id. at 67. The court concluded that "[a] mental patient's threat of serious harm to an identified victim is an appropriate circumstance under which the physician-patient privilege may be waived." Id.

While Peck does stand for the general proposition that the privilege is waivable in the interest of public policy, it offers little guidance to the lower courts with regard to when public policy so demands. Here, there is clearly a public interest in investigating allegations of illegal diversion of narcotics by a nurse. However, this is not a case like Peck in which it is the patient whose actions (or statements) have created the need for disclosure. In that sense, Peck is similar to the case law holding that a patient waives the privilege by putting his or her medical history at issue in litigation. Mattison v. Poulen, 134 Vt. 158, 161 (1976). *See also* V.R.E. 503 (d)(3). This

3

court construes <u>Peck</u> as holding that a patient who threatens to seriously harm a particular person is inferred to have thereby waived the privilege.

This case, by comparison, involves no action by the patients whose records are sought. They have done nothing to lose the medical privacy they have a right to expect. No action by them can be construed as a waiver. Instead, the alleged wrongdoing of their treatment provider is what has led to the request for the records. Thus, the public policy considerations are not the same as in <u>Peck</u>.[1]

Although the State's goal in this case is the protection of the public, that does not automatically outweigh the public policy concerns recognized by the patient's privilege. *Accord*, <u>Walker v. Firelands Community Hospital</u>, 2004 WL 290832 ¶¶ 22-23 (Ohio Ct. App. 2004). (rejecting argument that potential class members' interest in being informed of class action against hospital outweighed their privacy interest). Many other laudable goals could be cited for disclosure of privileged patient records – to investigate substance abuse by patients, to monitor insurance billing practices, and so on.[2] In each instance, the value we as a society accord to those other goals must be balanced against the value we accord to the privacy of our medical records. Such "public policy" exceptions involve value judgments about our priorities as a community. These are the kinds of policy determinations that should be made by the Legislature, not the courts. <u>Lowe v. Securities and Exchange Commission</u>, 472 U.S. 181, 213 (1985) (White, J., concurring)("The task of defining the objectives of public policy and weighing the relative merits of alternative means of reaching these objectives belongs to the legislature"); <u>Medical Center Hospital of Vermont v. Lorrain</u>, 165 Vt. 12, 16 (1996) ("The public policy issues

---

[1] Nor has the State explained why the investigation cannot be conducted with redacted records that do not disclose the patients' names, or why consent cannot be sought by the hospital from the patients in question.

[2] Although the court has not researched the question, there may, in fact, be specific statutes permitting disclosure of otherwise privileged patient information in such instances.

surrounding these circumstances are complex, and are best taken up by the Legislature . . .").
The court declines to create a new "public policy" exception to the patient privilege statute.

### 3. Waiver

The parties stipulated at oral argument that because another statutory provision requires the hospital to allow "inspections" of its records by the State investigator, the Hospital recently allowed the State's investigator to look at, but not copy, certain of the disputed patient records. *See* 18 V.S.A. § 4211. The State argues that this constituted a waiver of the privilege. The court declines to so rule, because it is a privilege for the protection of the patient, not the provider.[3] *Accord*, Stamy v. Packer, 138 F.R.D. 412, 418 (D.N.J. 1990) ("[O]nly the *holder* of the privilege may waive its protection.")(emphasis in original); Fitzgibbon v. Fitzgibbon, 484 A.2d 46, 68 (N.J. Super. Ct. Ch. Div. 1984) (privilege "may be waived only by the person to whom it belongs."); Mavroudis v. Superior Court, 162 Cal. Rptr. 724, 731 (Cal. Ct. App.1980) ("The therapist has no power to waive the patient's privilege and, in fact, is under a duty to assert it"). The court therefore declines to hold that the privilege has been waived by partial disclosure to the State's investigator.

### 4. Lack of Objection by the Hospital

The Hospital takes the position that it cannot disclose the records without a court order, but does not oppose the issuance of such an order. The court, however, will not issue an order without an adequate legal basis. While parties are generally free to waive rights and to stipulate to matters to which they might have valid legal objection, the court cannot accept the Hospital's lack of objection as a basis for issuing an order in this case. The interest protected by the

---

[3] If any disclosure by a provider constituted a waiver of the patient's right to keep his or her medical records private, the privilege would be toothless. Surely if a doctor handed over certain patient records to a drug company who wanted to market a new drug to them, or a nurse sent interesting excerpts of patient files to a newspaper, that could not mean the patient had lost the right to assert the privilege.

privilege is one belonging to the patients, who are not parties to this action. The court cannot ignore the statutory privilege even if the Hospital stands silent.

## Order

For the foregoing reasons, the court denies the request to enforce the subpoena by requiring production of unredacted patient records.[4] While there are good reasons to create an exception to the patient-physician privilege in circumstances where the State is investigating possible misconduct by health care providers, the creation of exceptions to the patient privilege statute is a subject properly addressed by the Legislature, not the courts.

Dated at Montpelier this 1st day of November, 2005.

_____
Helen M. Toor
Superior Court Judge

---

[4] The court presumes that the Hospital will continue to cooperate with the State by producing the records in redacted form as it previously offered to do.